1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   PHILLIP ANTHONY ROCHA,                Case No. 1:20-cv-00613-CDB  (SS)

12              Plaintiff,                 **ORDER GRANTING PLAINTIFF'S
                                           MOTION FOR SUMMARY JUDGMENT**
13         v.
                                           **ORDER REMANDING THIS MATTER
14   COMMISSIONER OF SOCIAL                FOR FURTHER PROCEEDINGS UNDER
     SECURITY,                             SENTENCE FOUR OF 42 U.S.C. § 405(g)**
15
                Defendant.                 (Doc. 18)
16

17

18         Plaintiff Phillip Anthony Rocha ("Plaintiff") seeks judicial review of a final decision of

19   the Commissioner of Social Security ("Commissioner" or "Defendant") denying the application

20   of claimant and former Plaintiff Gail Rocha for disability insurance benefits and supplemental

21   security income pursuant to Titles II and XVI of the Social Security Act.[1]  The matter is before

22   the Court on the parties' briefs which were submitted without oral argument to the United States

23   Magistrate Judge.[2]  (Docs. 18, 20, 23).  After reviewing the record the Court finds that the ALJ's

24   decision is not supported substantial evidence and applicable law.  Plaintiff's appeal therefore is

25   _____

26         [1] Ms. Rocha passed away on December 22, 2022.  (Doc. 27-1).  On March 27, 2023, the
     Court granted Plaintiff's Motion to Substitute Party, thereby substituting Ms. Rocha's husband,
27   Phillip Anthony Rocha, as Plaintiff.  (Doc. 29).

28         [2] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Doc.
     11.

1    granted.

2    **FACTUAL AND PROCEDURAL BACKGROUND[3]**

3        On January 13, 2017, claimant and former plaintiff Gail Rocha filed a Title II application

4    for a period of disability and disability insurance benefits, as well as a Title XVI application for

5    supplemental security income. Plaintiff alleges disabilities that began on January 1 2013.

6    (Administrative Record "AR" 15). Plaintiff's claim was initially denied on June 30, 2017, and

7    upon reconsideration on September 13, 2017. Plaintiff's matter proceeded to a hearing before an

8    Administrative Law Judge (ALJ), on April 23, 2019. Plaintiff was represented by counsel during

9    the hearing, at which Denise Weaver, an impartial vocational expert (VE), testified.

10       In connection with an earlier application by Plaintiff for Title II and Title XVI benefits

11   that culminated in a hearing before an ALJ on June 3, 3015, Plaintiff was found "not disabled" by

12   the ALJ. *See* (AR 68-87). In cases involving a claimant filing for benefits following a prior final

13   agency decision of non-disability, the prior administrative decision triggers a presumption of

14   continuing non-disability. *Chavez v. Bowen*, 844 F.2d 691, 692-94 (9th Cir. 1988). To overcome

15   this presumption of non-disability, the claimant must prove "changed circumstances" indicating a

16   greater disability. *Id*. at 693.

17       Examples of "changed circumstances" that can rebut the presumption of non-disability

18   include a change in the claimant's category under 20 C.F.R. § 404.1563, an increase in the

19   severity of the claimant's impairments, the alleged existence of an impairment not previously

20   considered, or a change in the criteria for determining disabilities are. (AR 16); *Garfield v.*

21   *Comm'r of Soc. Sec.*, No. 1:21-cv-01281-EPG, 2022 WL 4586293, at *2 (E.D. Cal. Sept. 29,

22   2022).

23       If the claimant successfully rebuts the presumption, the ALJ nevertheless must give effect

24   to certain findings contained in the final decision issued by an ALJ in the prior claim when

25   adjudicating the current claim. The findings that are given such effect are the claimant's residual

26   _____

27   [3] The Court has reviewed the relevant portions of the administrative record including the
     medical, opinion and testimonial evidence about which the parties are well informed, which will

28   not be exhaustively summarized below. Relevant portions will be referenced in the course of the
     analysis below when relevant to the parties' arguments.

1    functional capacity (RFC), education, work experience, or other finding required at a step in the

2    sequential evaluation process for determining disability under 20 C.F.R. §§ 404.1520, 416.920,

3    and 416.924.  *Id.* (quoting *Smith-Scruggs v. Astrue*, No. CV 09-4443-OP, 2010 WL 256546, at *2

4    (C.D. Cal. Jan. 21, 2010)).  In other words, the adjudicator must adopt a finding from the final

5    decision on the prior claim unless there is new and material evidence relating to such a finding or

6    there has been a change in the law, regulations or rulings affecting the finding or the method of

7    arriving at the finding.  *Chavez*, 844 F.2d at 693.

8          Here, the ALJ determined that Plaintiff's presumption of non-disability was effectively

9    rebutted because there was a change in her age category. (AR 16).  The ALJ reached his

10   determination after giving effect to the findings contained in the prior decision that remain

11   supported by the record as discussed below; and found that the record as a whole supports a

12   finding of non-disability.

13         The ALJ found that Plaintiff met the insured status requirements through December 31,

14   2015.  (AR 18).  Following the sequential evaluation, at step one, the ALJ found that Plaintiff has

15   not engaged in substantial gainful activity (SGA) since her alleged onset date (AOD) of

16   November 13, 2015.  (*Id.*).  At step two, the ALJ found that plaintiff's degenerative joint disease

17   of the bilateral knees, carpal tunnel syndrome (CTS), and loss of visual efficiency constituted

18   severe medically determinable impairments (MDI).  In contrast, the ALJ found that Plaintiff's

19   MDIs of psychotic disorder and depressive disorder were not severe. (AR 19).  At step three, the

20   ALJ determined that Plaintiff did not have an impairment or combination of impairments that

21   meets or equals the requirements of a listing.  (AR 21).

22         The ALJ found that Plaintiff can perform light work as defined on 20 C.F.R. §§

23   404.1567(b) and 416.967(b).  (AR 22).  At step four, the ALJ found that Plaintiff was capable of

24   performing her past relevant work (PRW) as a teacher's aide II.  (AR 27). The ALJ gave

25   significant weight to the opinions of the State agency consultants Drs. Samplay M.D. and G.

26   Taylor M.D.  (AR 26).  On the other hand, the ALJ afforded minimal weight to the verifications

27   of incapacity completed by Alma Ramirez PA, and David Sanchez PA.  (AR 26).  The ALJ also

28   gave little weight to the November 6, 2016, and February 8, 2019, Treating Source Statements by

3

1    Mr. Sanchez.  (*Id*.).

2         Accordingly, the ALJ found that Plaintiff was not disabled at step four of the sequential

3    evaluation.  Plaintiff requested review from the Appeals Council on March 16, 2020.  (AR 1-6).

4    After exhausting her administrative remedies, Plaintiff filed the instant action seeking judicial

5    review pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).[4]

6                                    **STANDARD OF LAW**

7         A district court's review of a final decision of the Commissioner of Social Security is

8    governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

9    Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

10   is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

11   evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

12   conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

13   equates to "more than a mere scintilla[,] but less than a preponderance."  *Id*. (quotation and

14   citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

15   consider the entire record as a whole rather than searching for supporting evidence in isolation.

16   *Id.*

17        In reviewing a denial of benefits, a district court may not substitute its judgment for that of

18   the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

19   to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

20   2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

21   harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

22   nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's

23   decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

24   U.S. 396, 409-10 (2009).

25

26   _____

27        [4] Plaintiff's motion for summary judgment was fully briefed by the parties as of October 7,
     2021 (Doc. 23).  The matter was reassigned to the undersigned on October 5, 2022 (Doc. 25).
28   The undersigned regrets the delay in issuing this ruling caused largely by the tremendous backlog
     of motions and other matters on the Court's overtaxed docket.

**FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual

1     functional capacity." Residual functional capacity (RFC), defined generally as the claimant's

2     ability to perform physical and mental work activities on a sustained basis despite his or her

3     limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

4        At step four, the Commissioner considers whether, in view of the claimant's RFC, the

5     claimant is capable of performing work that he or she has performed in the past (past relevant

6     work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant

7     work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If

8     the claimant is incapable of performing such work, the analysis proceeds to step five.

9     At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is

10    capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In

11    making this determination, the Commissioner must also consider vocational factors such as the

12    claimant's age, education and past work experience. *Id.* If the claimant is capable of adjusting to

13    other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §

14    416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a

15    finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

16       The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*,

17    180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the

18    Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

19    work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*

20    *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

21                             **ISSUES BROUGHT FOR REVIEW**

22       Plaintiff argues that (1) the ALJ's finding that she had "past relevant work" (PRW) as a

23    teacher's aide is not supported by substantial evidence; (2) the ALJ committed harmful error by

24    failing to find that Plaintiff's medically determinable impairments of major depressive disorder

25    and psychotic disorder more than minimally interfere with her ability to sustain work activity at

26    step two and the ALJ committed harmful error by failing to develop the record on Plaintiff's

27    psychiatric impairments; (3) the RFC is not supported by substantial evidence because it does not

28    account for Plaintiff's visual impairments; and (4) the Court should apply the "credit-as-true"

1  rule.

2  **DISCUSSION**

3  **1.  Whether the ALJ's Finding That Plaintiff Has PRW as a Teacher's Aide II is**
4  **Supported by Substantial Evidence**

5      Plaintiff argues that the ALJ erred in concluding Plaintiff had PRW as a Teacher's Aide

6  II.  In relevant part, the ALJ found that Plaintiff has a "sporadic work record punctuated by

7  periods of unemployment."  (AR 25).  Among other things, the ALJ found that Plaintiff achieved

8  income consistent with a full year's engagement in SGA in 2006.  (*Id.*).  He further found that

9  Plaintiff stopped working full-time on June 7, 2010, due to budget cuts and not because of her

10  impairments.  (AR 26).  The ALJ concluded that Plaintiff had not engaged in substantial gainful

11  activity since the alleged onset date of November 13, 2015.  (AR 18, citing 20 C.F.R. §§

12  404.1571 *et seq.,* 416.971 *et seq.*).

13      At the step four analysis, the ALJ found that Plaintiff could perform past relevant work as

14  a teacher's aide II – the occupation in which she was employed from 1992 until June 7, 2010.

15  (AR 27).  He noted that "[a] job is considered past relevant work if it is work that the claimant

16  has performed within the past 15 years, that met the definition of substantial gainful activity, and

17  that lasted long enough for the claimant to learn to do it."  (*Id.*, citing 20 C.F.R. § 404.1560(b)(1),

18  416.960(b)(1)).  The ALJ noted that while Plaintiff was employed during 1995, she earned

19  $7,404.85, which demonstrated engagement in SGA.  (AR 27)

20      Under the Social Security Act, a "disability" is defined as the "inability to engage in any

21  substantial gainful activity by reason of any medically determinable physical or mental

22  impairment which can be expected to result in death or which has lasted or can be expected to last

23  for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Thus, at step one

24  of the sequential analysis, the ALJ must determine whether a claimant engaged in substantial

25  gainful activity.  20 C.F.R. §§ 404.1520.  If a claimant was engaged in substantial gainful activity

26  after the onset of disability date, the analysis stops, and a finding of not disabled is mandated

27  under the Social Security Act.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b) ("If you are working

28  and the work you are doing is substantial gainful activity, we will find that you are not disabled

1   regardless of your medical condition or your age, education, and work experience.”).

2          At step four of the sequential evaluation, the claimant has the burden of showing that she

3   lacks the RFC (*e.g.*, ability to perform physical and mental work activities on a sustained basis

4   despite limitations) to engage in “past relevant work.” *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir.

5   2001); 20 C.F.R. § 404.1520(e).  A claimant’s prior work qualifies as “past relevant work” if it

6   “was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was

7   substantial gainful activity.” 20 C.F.R. § 416.965(a). Therefore, “[a] job qualifies as past relevant

8   work *only if* it involved substantial gainful activity.” *Id.* (emphasis added).

9          “Substantial gainful activity” is defined as “work activity that involved doing significant

10  physical or mental activities . . . that [a clamant does] for pay or profit.” 20 C.F.R. §§ 404.1572,

11  416.972.  “Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial

12  activity.”  *Lewis*, 236 F.3d at 515.  A presumption arises that a claimant engaged in SGA if the

13  claimant’s monthly income exceeds a certain average that is designated for each calendar year

14  during that relevant 15-year period. 20 C.F.R. §§ 404.1574, 416.974; *Keyes v. Sullivan*, 894 F.2d

15  1053, 1056 (9th Cir. 1990).  In contrast, a “presumption that arises from low earnings shifts the

16  step-four burden of proof from the claimant to the Commissioner.”  *Lewis*, 236 F.3d at 515.

17  Consequently, “when a plaintiff’s low earnings shift the burden to the Commissioner to show

18  other factors warrant characterizing prior work as SGA, the ALJ must presume that prior work is

19  not SGA unless the Commissioner proves otherwise.”  *Andry v. Colvin*, No. 2:12-cv-00746-KJN,

20  2013 WL 5305903, at *3 (E.D. Cal. Sept. 1, 2013). Factors the Commissioner may consider

21  include “the nature of the claimant’s work, how well the claimant does the work, if the work is

22  one under special conditions, if the claimant is self-employed, and the amount of time the

23  claimant spends at work.”  *Lewis*, 236 F.3d at 515-16 (citing 20 C.F.R. §§ 404.1573, 416,973).

24         Plaintiff argues that the ALJ committed error at step four.  First, she argues it was

25  improper for the ALJ to reference her work history in 1995 (during which the ALJ found

26  Plaintiff’s income qualified the employment as SGA) because that year falls outside the 15-year

27  window for which the ALJ may consider past relevant work.  (Doc. 18, pp. 14-15). However, the

28  15-year period “is a guide, not a bright-line rule.”  *De Romero v. Berryhill*, 1:17-cv-01508-JLT,

8

1    2019 WL 93273, at *8 (E.D. Cal. Jan. 3, 2019) (citing 20 C.F.R. § 404.1565(a) and SSR 82-62,

2    1982 WL 31386, at *2).  Furthermore, even if true, Plaintiff's argument does not undermine the

3    ALJ's conclusion that Ms. Rocha did engage in SGA during the relevant period – in particular,

4    during 2006.  (AR 25).  Plaintiff acknowledges as much in her briefing and also concedes earning

5    more than the minimum threshold amounts permitted in 2001.  (Doc. 18, p.10).

6         Plaintiff also cites the Court of Appeals' decision in *Keyes* for the proposition that "the

7    mere existence of earnings over the statutory minimum is not dispositive."  (Doc. 18 at 10-11)

8    (citing *Keyes*, 894 F.3d at 1056).  Though Plaintiff's citation is correct, the Court in *Keyes*

9    reaffirmed "there is a presumption of substantial gainful employment if the applicant earns over

10   the amount specified in the guidelines."  *Id.*  In such cases, the claimant bears the burden of proof

11   to rebut the presumption of SGA "with evidence of his inability to be self-employed or to perform

12   the job well, without special assistance, or for only brief periods of time."  *Id. See* 20 C.F.R. §

13   416.973(c).  Plaintiff points to her testimony that she worked on average only 15 to 20 hours of

14   week during the school year.  (AR 46).  However, that does not constitute a "brief period of time"

15   sufficient to rebut the presumption as work may be substantial even if it is done on a part-time

16   basis. 20 C.F.R. § 416.972(a). In addition, Plaintiff fails to support with record facts or otherwise

17   demonstrate that her less-than-full-time work hours related to an inability to work for longer

18   periods of time. To the contrary, Plaintiff ceased working as a teacher's aide due to budget cuts

19   and not because of impairments.  (AR 25).

20        The ALJ properly found that Plaintiff had earnings above the statutory minimum during

21   the relevant period and Plaintiff has not rebutted the presumption that she was engaged in SGA.

22   *Keyes*, 894 F.2d at 1056.  Accordingly, the ALJ's findings that Plaintiff had PRW as a teachers'

23   aide II at step four are supported by substantial evidence.

24   **2. Whether the ALJ's Finding of Plaintiff's RFC Properly Accounted for Plaintiff's**
     **Vision Impairment**

25

26        The RFC is an assessment of the sustained, work-related physical activities that a claimant

27   can still do on a regular and continuing basis despite the claimant's limitations. 20 C.F.R. §§

28   404.1520(e), 404.1545(a), 416.645(a); *see Valencia v. Heckler*, 751 F.2d 1082, 1085 (9th Cir.

9

1   1985) (RFC reflects current "physical and mental capabilities").  The RFC is not a medical

2   opinion, but a legal decision that expressly is reserved for the Commissioner.  *Vertigan v. Halter*,

3   260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the

4   claimant's physician, to determine residual functional capacity.")  And where "the record

5   contains conflicting medical evidence, the ALJ is charged with determining credibility and

6   resolving the conflict."  *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). "[T]he ALJ is

7   the final arbiter with respect to resolving ambiguities in the medical evidence."  *Tommasetti*, 533

8   F.3d at 1041 (citations omitted).  In reviewing a claim the ALJ committed error in determining

9   the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding.

10  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-1174 (9th Cir. 2008).

11          Plaintiff argues that the RFC is not supported by substantial evidence as the ALJ failed to

12  account for her visual limitations. The ALJ assigned significant weight to the opinions of Drs.

13  Samplay and Taylor after finding they were based upon comprehensive reviews of the record and

14  were accompanied by detailed narratives of the evidence the consultants relied upon in rendering

15  their conclusions.  (AR 26).  Drs. Samplay and Taylor both relied on the ophthalmology treatment

16  records from Dr. Samuel Hinton who found that Plaintiff's best corrected vision was 20-25 OD

17  and 20/20 OS.  *See* (AR 468, 504). Following a review of Dr. Hinton's records, Dr. Samplay

18  noted that Plaintiff had "narrow angle s/p LPI, glaucoma suspect, cataract."  (AR 102-03).  Dr.

19  Taylor acknowledged Plaintiff's "blurred vision" but recorded Plaintiff otherwise had no visual

20  limitations.  (AR 164).  Therefore, since the ALJ relied on Drs. Samplay and Taylor's reports in

21  assessing Plaintiff's RFC, who in turn relied on Dr. Hinton's ophthalmology findings, the ALJ's

22  RFC is supported by substantial evidence.

23          Plaintiff separately argues the ALJ committed error by eliciting testimony from a VE

24  based on a hypothetical that did not include "all of the claimant's functional limitations, including

25  in this case, sudden blurry vision and pain which cannot be corrected."  (Doc. 18 at 28).

26  However, an ALJ properly may limit his hypotheticals to restrictions that he concludes are

27  supported by substantial evidence on the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18

28  (9th Cir. 2005) (citing *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989)).  Since the

1   ALJ's finding that Plaintiff had no restrictions due to her vision impairments was supported by

2   substantial evidence, he likewise did not err by not including the visual impairments in the

3   hypothetical.

4       **3.  Whether the ALJ Erred by Failing to Find that Plaintiff's MDI of Major Depressive
           Disorder and Psychotic Disorder More than Minimally Interfered with Her Ability**

5       **to Sustain Work Activity at Step Two.**

6           The ALJ found that Plaintiff's medically determinable impairments of psychotic disorder

7   and depressive disorder were non-severe.  (AR 19).  He reached his determination by analyzing

8   the four areas of mental function known as the "paragraph B" criteria which consists of:

9   understanding, remembering, or applying information; interacting with others; concentrating,

10  persisting, or maintaining pace; and adapting or managing oneself. *See* 20 C.F.R., Pt. 404,

11  Subpart P, App. 1.

12          The ALJ noted that Plaintiff has a history of taking Zoloft to manage her mental

13  impairments, which he found to effectively treat those impairments, and noted that the majority

14  of Plaintiff's psychiatric testing in the administrative record yielded normal findings.  The ALJ

15  cited Plaintiff's Adult Function Report, dated April 5, 2017, in which Plaintiff denied having

16  problems remembering things, completing tasks, concentrating, understanding things, following

17  instructions, or getting along with others. (AR 20, citing AR 324-25).  The ALJ further found

18  that Plaintiff was able to meet her personal care and grooming needs, perform household chores

19  and leave her house independently.  (AR 20).

20          Likewise, the ALJ found that most of the psychiatric testing documented in the record

21  consisted of normal medical findings, attributable in part to the apparent usefulness of the

22  prescription of Zoloft.  (*Id.*).  The ALJ noted that on September 28, 2018, Plaintiff presented as

23  anxious, with a mild impairment in her ability to make reasonable decisions, and reported

24  auditory hallucinations, but lacked any objective indicators of active psychosis.  On July 25,

25  2018, Plaintiff was referred to Community Medical Centers due to reported hallucinations. She

26  had a blunted affect and displayed delusions of grandeur, but Plaintiff also tested positive for

27  methamphetamine. (AR 677, 680, 688).

28          The ALJ also noted that Plaintiff presented to United Health Centers on February 26,

11

2019, with depressed and anxious affect as well as auditory hallucinations. Dr. Sarah Morgan prescribed her with risperidone and Lexapro.  (AR 825).  The ALJ listed two other examples, one on March 19, 2019, and another on March 28, 2019, during which Plaintiff presented to Dr. Morgan with auditory hallucinations. (AR 821, 815).

Ultimately, the ALJ assigned significant weight to the opinions of non-examining State agency consultants Drs. H. Samplay M.D. and G. Taylor, M.D. *see generally* (AR 92-113, 114- 135, 138-152, 153- 167).  The ALJ acknowledged that some evidence was added to the record after the State agency consultants reviewed it, but nevertheless found that the additional evidence did not document an appreciable worsening of Plaintiff's condition after the State agency consultants' opinions were rendered.  (AR 26).

Plaintiff accurately notes that the State agency opinions were based on evidence that was received and reviewed through June 29, 2017.  (AR 134, 147).  However, the record indicates that following her son's suicide on February 14, 2019, Plaintiff's depression and psychosis symptoms may have appreciably deteriorated.

On February 26, 2019, Plaintiff presented to Dr. Morgan with concerns that she was hearing voices. (AR 823).  Plaintiff informed Dr. Morgan of her son's loss and complained that she had been hearing voices for the last six years after she "rebuked the devil on the west side." (*Id.*).  Plaintiff reported that she used methamphetamine from 2011 to 2014 and began drinking two "Twisted Teas" every day since her son's passing. (AR 824).

According to Dr. Morgan's mental status exam, Plaintiff reported her history of using cocaine and methamphetamine.  (AR 824).  Several weeks later, on March 19, 2019, Plaintiff presented to Maysee Yang, LCSW, and reported hearing voices "every day, all day long."  She further presented anxious thoughts, depressed mood, difficulty concentrating, and diminished interest or pleasure. (AR 817-18).  On March 28, 2019, Plaintiff again presented to Dr. Morgan with complaints of auditory hallucinations.  (AR 814-16).  Dr. Morgan increased Plaintiff's Lexapro dosage to deal with her depressive disorder and noted: "[Patient] requires higher level of care than [United Health Centers] can provide."  Dr. Morgan recommended Plaintiff undergo an MRI of her head and noted: "[u]specified psychosis not due to a substance or known

1    physiological condition."  (AR 816).

2        Plaintiff asserts that the ALJ erred by failing to obtain an opinion from an examining

3    source or submit the updated records to a medical professional for interpretation. "In Social

4    Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that

5    the claimant's interests are considered, even when the claimant is represented by counsel."

6    *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).  "The ALJ's duty to develop the record

7    fully is also heightened where the claimant may be mentally ill and thus be unable to protect her

8    own interests.  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to

9    allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate

10   inquiry." *Tonapetyan v. Halter*, 242 F.3d 114, 1150 (9th Cir. 2001) (internal quotes and citations

11   omitted).  The ALJ may discharge this duty by subpoenaing the claimant's physicians, submitting

12   questions to the claimant's physicians, continuing the hearing, or keeping the record open after

13   the hearing to allow supplementation of the record.  *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir.

14   1998).  However, the ALJ's duty to develop the record is "triggered *only* when there is

15   ambiguous evidence, or the record is inadequate for proper evaluation of the evidence." *Mayes*,

16   276 F.3d at 459-60 (emphasis added).  An updated opinion is not required simply because

17   additional medical evidence is received after the State agency physicians had already reviewed

18   Plaintiff's records.  *See de Hoog v. Comm'r of Soc. Sec.*, No. 2:13-cv-0235-KJN, 2014 WL

19   3687499, at * 7 (E.D. Cal. July 23, 2014) (explaining that "[i]n virtually every case further

20   evidence is received after the state agency physicians render their assessments – sometimes

21   additional evidence and records are even received after the ALJ hearing. For that very reason, the

22   ALJ is tasked with considering evidence in the record as a whole.")

23       The duty to develop may arise in situations where the subsequent objective evidence

24   suggests a condition that could materially impact the disability decision.  *Molina v. Berryhill*, No.

25   2:17-cv-01991 CKD, 2018 WL 6421287, at *3 (E.D. Cal. Dec. 6, 2018), or where the later

26   records consist of "raw medical data." *Escudero v. Comm'r of Soc. Sec.*, No. 1:18-cv-01136-EPG,

27   2019 WL 4917634, at *2 (E.D. Cal. Oct. 4, 2019) (finding the ALJ improperly failed to develop

28   the record where some of the medical evidence post-dating the opining physicians' assessments

1    was not "self-evident" and instead "appear[ed] to be very medical in nature and not susceptible to

2    a lay understanding."); *Goodman v. Berryhill*, No. 2:17-cv-01228-CKD, 2019 WL 79016, at *5

3    (E.D. Cal. Jan. 2, 2019) (subsequent medical evidence giving rise to duty to develop the record

4    when it related to "significant medical events relevant to plaintiff's physical condition.")

5            Responding to Plaintiff's argument, the Commissioner cites *Rivera v. Berryhill*, No. 1:16-

6    cv-1930-GSA, 2018 WL 1083871, at *6 (E.D. Cal. Feb. 28, 2018). (Doc. 20 at 21).  In *Rivera*, the

7    claimant failed to present "everything that supports a disability determination," including medical

8    or other evidence relating to the alleged impairment's effect on the claimant's ability to work.  *Id*.

9    The claimant had sought treatment only six months prior to the hearing, did not testify to the

10   impairment's effects on her ability to work, and refused medication to treat her symptoms. *Id*.

11   Here, the Commissioner contends that the ALJ "properly evaluated the extremely limited mental

12   health treatment records and Mr. Sanchez's questionnaires in concluding that Plaintiff did not

13   have a severe mental impairment or limitation in her ability to perform basic mental work

14   activities in the RFC finding."

15           However, this case is distinguishable from *Rivera* in several important respects.  Although

16   Plaintiff did not testify concerning her mental impairments during her hearing before the ALJ, she

17   identified depressive disorder and psychotic disorders as severe impairments in her pre-hearing

18   brief.  (AR 368).  Plaintiff's sustained record of reporting mental impairments to her medical

19   providers (between 2013 and 2019) is more substantial than the Plaintiff in *Rivera*.  Furthermore,

20   Plaintiff's medical records generally allude to methamphetamine use but it is ambiguous how and

21   the extent to which that bears on any mental impairment suffered by Plaintiff.

22           The medical records demonstrate that Plaintiff's mental health conditions predictably

23   worsened following her son's suicide in February 2019, in the weeks leading up to her hearing

24   before the ALJ on April 23, 2019.  Curiously, Plaintiff did not present this development during

25   her affirmative testimony and was not questioned about the circumstances by either the ALJ or

26   counsel.  (AR 37). According to Dr. Morgan and Ms. Yang's records, Plaintiff's increased

27   auditory hallucinations appear to be unrelated to the use of illicit substances. (AR 818, 825)

28           As the Commissioner acknowledges, Plaintiff's mental health treatment records are

14

1    extremely limited. (Doc. 20 at 17). While the Commissioner nevertheless argues that the ALJ

2    properly evaluated those limited records, the ALJ is not a "mere umpire" during disability

3    proceedings. *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006). Rather, the ALJ has "a

4    special duty to fully and fairly develop the record and to assure that the claimant's interests are

5    considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).  This is especially true when

6    the claimant may have a mental impairment. *Delorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir.

7    1991).  The ALJ's failure to further develop the record is not harmless.  Although further

8    development of the record may not yield any further significant findings in respect to Plaintiff's

9    mental health impairments, there is a genuine probability that the reviewing experts may reach a

10   different conclusion or would have offered different findings in respect to Plaintiff's RFC based

11   on these additional facts and circumstances. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932-

12   33 (9th Cir. 2014) (finding harmful legal error where ALJ did not discharge his duty to

13   supplement the record).

14                              **CONCLUSION AND ORDER**

15          For the reasons set forth above, the Court finds that remand is appropriate under 42 U.S.C.

16   § 405(g) for further development of the record.  The Court declines to issue an award of benefits

17   under the "credit-as-true" rule.  The "credit-as-true" rule is applicable where (1) the record has

18   been fully developed and further administrative proceedings are not useful; (2) the ALJ has failed

19   to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or

20   medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ

21   would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995,

22   1020 (9th Cir. 2014).  Even if all the conditions of the "credit-as-true" rule are met, the Court

23   nevertheless retains "flexibility to remand for further proceedings when the record as a whole

24   creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the

25   Social Security Act." *Id*. at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir.

26   2015).

27          In this case, Dr. Morgan and Ms. Yang's medical records indicate that Plaintiff had an

28   appreciable worsening of her mental health impairments after her son's suicide on February 14,

2019.  The reports of both the State agency consultants and Mr. Sanchez predate Plaintiff's visits to Dr. Morgan and Ms. Yang, and thus none had the benefit of those records to incorporate into their findings. On remand, Plaintiff's' record of medical impairments for the relevant period should be supplemented where possible, and the State agency reviewing consultants should have access to those records when developing their RFC reports.  Since there is lingering doubt as to whether Plaintiff is disabled within the meaning of the Social Security Act, the "credit-as-true" rule will not be applied.

Because the Court finds that the ALJ's decision is not supported by substantial evidence as to the severity of the MDIs of major depressive disorder and psychotic disorder, it is **HEREBY ORDERED** the ALJ's decision is VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order.

The Clerk of this Court is **DIRECTED** to enter judgment in favor of Plaintiff Phillip Anthony Rocha and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **July 25, 2023**

UNITED STATES MAGISTRATE JUDGE